**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Weatherford U.S., LP, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION TO COMPEL** |
| vs. | ) | |
| | ) | |
| Chance Innis and Noble Casing, Inc., | ) | |
| | ) | Case No. 4:09-cv-061 |
| Defendants. | ) | |

___

Before the court is a Motion to Compel filed by the plaintiff, Weatherford U.S., LP ("Weatherford"), on March 28, 2011. For the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

Weatherford is a Texas-based oilfield services company doing business in North Dakota. It hired Chase Innis ("Innis") to work in the Williston office of its tubular running service (TRS) division on September 24, 2007.

Weatherford terminated Innis on morning of August 12, 2009. Unbeknownst to Weatherford, Innis returned to its TRS office in Williston later that evening. Shortly before midnight he logged onto Weatherford's intranet site using his work computer and downloaded a number of files onto a SanDisk thumb drive.

On August 31, 2009, Innis formed Noble Casing, Inc. ("Noble Casing"), a competing oilfield services company. On September 17, 2009, Weatherford filed suit against Innis and Noble Casing in this court, asserting that Innis had used his knowledge of Weatherford's business practices along with files he had surreptitiously downloaded from Weatherford's intranet site to his thumb drive to "jump start" Noble Casing. Its complaint set forth ten causes of action: (1) violations of 18 U.S.C.

1

§ 1030; (2) misappropriation and inevitable disclosure of trade secrets in violation of N.D.C.C. Ch. 47-25.1; (3) breach of a written employment agreement; (4) tortious interference with business relations; (5) breach of the duty of loyalty; (6) misappropriation of trade secrets; (7) violations of N.D.C.C. § 32-02-014; (8) unjust enrichment; (9) unfair competition; and (10) conversion.

The court held a scheduling conference with the parties on December 14, 2009. Thereafter it issued a scheduling and discovery order memorializing the pretrial deadlines agreed upon by parties. At the parties' request, this order was later amended.

On June 3, 2010, Weatherford served a deposition notice and subpoena duces tecum upon Innis. Therein it requested that he produce the original external storage device onto which Chance Innis downloaded files from his work computer on August 12, 2009, and numerous categories of documents. (Docket No. 33-3).

At his deposition, Innis acknowledged that he used Weatherford's computer in the late evening and early morning hours of August 12 and 13, 2009, to download files without authorization onto a SanDisk thumb drive. He claimed, however, that he did not later open or go through the downloaded files. (Docket No. 33-1, at Dep. pp. 87-89).

Innis produced the drive onto which he had downloaded Weatherford's files and it was subsequently examined by Weatherford's forensic expert, who, in a report opined that

> files containing Weatherford information were accessed from the thumb drive after Mr. Innis' termination on 8/12/2009. On 8/19/2009 two Weatherford spreadsheets were accessed on the same date a new price list document was copied to the thumb drive. It is also my opinion that an Apple Mac computer was used to access files on the thumb drive on 8/24/2009 and that files could have been copied off the thumb drive on 9/25/2009.

(Docket No. 33-4).

On September 16, 2010, Weatherford wrote to defendants to request the production of certain

documents that Innis had stated were available and had agreed to produce during his deposition. (Docket No. 33-5). Defendants' counsel allegedly did not respond to this letter and claimed he did not receive it.

On November 2, 2010, Weatherford served a second set of Requests for Production on defendants. Therein, Weatherford requested access to all computers owned by Noble Casings and used by its employees since its inception as well as any and all portable storage devices that had been plugged into these computers. (Docket No. 33-6). Defendants objected to these requests on the grounds that they were unduly burdensome, overly broad, not reasonably calculated to lead to discoverable evidence, and could result in the disclosure of confidential and proprietary information.

Following the service of the second set of discovery requests, counsel for Weatherford corresponded with defendants' counsel by e-mail on several occasions in an attempt to resolve the outstanding disputes, to no avail. (Docket Nos. 33-8 & 33-9). On February 23, 2011, Weatherford's counsel advised defendants' counsel of its intent to move forward with a motion to compel if satisfactory responses were not made on or before February 28, 2011. (Docket No. 33-10). All of this occurred prior to the discovery cutoff deadline.

Under the court's local rules, counsel are required to do two things before filing discovery any motions. First, they are required to confer and attempt in good faith to resolve the disputes. Second, if they are not able to do so, they are required to schedule a telephone conference with one of the magistrate judges for the purpose of talking through the discovery disputes to see if they can be resolved informally, and, if not, for the magistrate judge to decide how best the disputes can be resolved. D.N.D. Civ. L.R. 37.1. To satisfy these requirements, Weatherford's counsel conferred with defendants' counsel in person on March 1and 2, 2011. When that was unsuccessful, she

scheduled a telephone conference with the undersigned, which was held on March 17, 2011. During the telephone conference, the court was unable to resolve the outstanding disputes and directed that a formal motion to compel be filed.

Weatherford subsequently filed a motion to compel the production of all documents identified in the subpoena duces tecum dated June 3, 2010. The matter has now been fully briefed and is ripe for the court's consideration.

## II.  DISCUSSION

### A.  Contentions of the parties

Weatherford states that it needs access to the subpoenaed materials in order to ascertain whether its policies and procedures were converted and used by defendants. It further contends that the breadth of its request is necessitated in part by defendants' unwillingness to produce any electronic information in their Rule 26 disclosures as well as what it perceives as discrepancies between Innis' deposition testimony and the findings of its forensic expert. To minimize disruptions to defendants' operations and alleviate their concerns about the disclosure of privileged communications, Weatherford proposes that a forensic expert of its choice be permitted to image[1] the defendants' computers at a date, time, and location convenient for defendants with the understanding that Weatherford will bear the expert's expenses, have the expert execute a confidentiality agreement, and afford defendants an opportunity to first screen the imaged documents for any information they consider to be confidential and/or privileged.

Defendants counter that Weatherford's motion is untimely. They further object to the

---

[1] Imaging, in computer parlance, refers to the forensic duplication, bit for bit and sector for sector, of all allocated and unallocated space, including slack space, on a computer hard drive. See Balboa Threadworks, Inc. v. Stucky, No. 05-1147-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. March 24, 2006).

imaging of their computers by Weatherford on the grounds that such imaging is overly intrusive to the extent that it may provide Weatherford with confidential, proprietary, and trade secret information. If, however, the court were to inclined to grant Weatherford's motion and allow Weatherford access to their computers, they propose an alternative protocol wherein an expert retained by both parties for the court's benefit would shepherd the imaging of computers and the dissemination of any documents obtained as a result.

Weatherford takes issue with defendants' assertion that its motion is untimely. First, it stresses that it filed the motion to compel less than one month after the close of discovery and only after it had conferred with defendants in an attempt to resolve this matter without the court's involvement. Second, it avers that its neglect in filing the motion prior to the discovery deadline is excusable given the circumstances. As for the imaging of defendants' computers, it dismisses defendants' privacy concerns as disingenuous and insists that its imaging protocol is superior to the alternative proposed by defendants. Finally, it requests recompense for costs and attorneys fees it has incurred in this matter.

### B. Defendants' timeliness objection

The court is not inclined in this case to deny Weatherford's motion because it was filed after the deadline for completion of discovery. The record is clear that Weatherford's counsel had attempted over the course of several months prior to the expiration of the time permitted for discovery to work out a resolution of the discovery disputes and advised defendants' counsel that a motion to compel would be requested if an agreement could not be reached. When these efforts were unsuccessful, Weatherford's counsel scheduled a face-to-face meeting with defendants' counsel in an effort to further comply with the court's Local Rules. This meeting took place as the

deadline established for completion of discovery was expiring. When that failed, Weatherford's counsel contacted the court to schedule the required telephone conference with the magistrate judge. It appears that the scheduling of the latter efforts was driven in part by the schedules of the attorneys as well as the court's availability for the latter conference. Finally, the record before the court is that Weatherford has been diligent in its discovery efforts, and the discovery that is the subject of the motion to compel is followup discovery that became necessary in part because of the apparent lack of candor on Innis's during his deposition testimony.

Normally, a motion to compel should be filed in advance of the deadline for completion of discovery. Ginett v. Federal Express Corp., 166 F.3d 1213 (Table), 1998 WL 777998, *5 (6th Cir. 1998) (unpublished opinion); Voter v. Avera Brookings Medical Clinic, No. Civ. 06-4129, 2008 WL 4372707, *1 (D.S.D. Sept. 22, 2008); Anaheim Gardens v. United States, No. 93-655 C, 2008 WL 2043242, *2 (Ct. Fed. Cl. Feb. 29, 2008); Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 396 (N.D. Tex. 2006). However, the court has the discretion to provide relief from strict compliance with the court's rules. See, e.g., Ayers v. Continental Cas. Co., 240 F.R.D. 216, 224-225 (N.D. W. Va. 2007); cf. In re Baycol Products Litigation, 596 F.3d 884, 888 (8th Cir. 2010); Dennis v. Dillard Dept. Stores, Inc., 207 F.3d 523, 526 (8th Cir. 2000). In this case, Weatherford had demonstrated good cause for an enlargement of time to allow it to complete the discovery that is the subject of the motion to compel.

    **C.**    **Defendants' confidentiality objection**

A party is entitled to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). With respect to discovery of electronically stored information, "the Federal Rules of Civil Procedure require a party to produce and permit the

party making the request . . . to inspect, copy, test, or sample any . . . electronically stored information." Genworth Fin. Wealth Mgmt, Inc. V. McCullan, 267 F.R.D. 443, 446 (D. Conn. 2010) (quoting Fed. R. Civ. P. 34(a)). "This right to information however, is counterbalanced by a responding party's confidentiality or privacy interests." Id. (citing Notes of Advisory Committee on 2006 Amendments). Moreover, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P 26(b)(2)(B) (adding that "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).").

"It is not unusual for a court to enter an order requiring the mirror imaging of the hard drives of any computers that contain documents responsive to an opposing party's request for production of documents," particularly in cases where trade secrets and electronic evidence are both involved. Balboa Threadworks, Inc. v. Stucky, No. 05-1157, 2006 WL 763668, at *3 (D. Kan. March 24, 2006) ("This is one method of assuring the preservation of evidence since electronic evidence easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer)"). That being said, courts "have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." Id.; see also Genworth Fin. Wealth Mgmt, Inc. V. McCullan, 267 F.R.D. at 446 (citing American Ind., Inc. v. Liberman, No. 4:06 CV 524-DJS, 2006 WL 3825291, at *3, * 6 (E.D. Mo. Dec. 27, 2006), amended by 2007 WL 685623 (E.D. Mo. Feb. 23, 2007)).

Here, Weatherford's claims are neither vague nor unsubstantiated. Weatherford claims that Innis transferred the Weatherford files that he had downloaded to a thumb drive to other computers and used the confidential information to get Noble Casings off the ground. Innis's acknowledgment that he downloaded Weatherford files to a thumb drive without permission is itself enough to provide a nexus between Weatherford's claims and its need for images of the defendants' computers. In addition, Weatherford has proffered the opinions of a forensic expert that the materials on the thumb drive have been accessed despite Innis's claims to the contrary.

Based on the record before the court, defendants are in a poor position to argue that their rights to confidentiality should now trump Weatherford's legitimate discovery needs. That argument is rejected.

### D. Defendants' protocol objections

The court concludes that an imaging protocol similar to one proposed by Weatherford should be sufficient to address defendants' concerns and ensure that defendants are not unduly burdened. Ameriwood Ind., Inc. v. Liberman, No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006) (citing Antioch Co. v. Scrapbook Border, Inc., 210 F.R.D. 645, 653-54 (D. Minn. 2002), Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. at 639 643-44 (S.D. Ind. 2000), and Playboy Enters. v. Welles, 60 F.Supp.2d 1050, 1054 (S.D.Cal.1999)).

### III. CONCLUSION AND ORDER

Based on the foregoing, Weatherford's motion to compel (Docket No. 31) is **GRANTED**, except for its request for costs and expenses which is **DENIED**. It is hereby **ORDERED** that the parties shall adhere to the imaging, recovery and disclosure process set forth below:

1. A computer forensic expert selected by Weatherford (hereinafter referred to as "the

      expert") shall execute a confidentiality agreement agreed to by the parties and sign a copy of and abide by the protective order in place in the instant action.

2. Defendants will make their computer equipment available to the expert at their places of business or residences at mutually agreeable times. The expert will use his best efforts to avoid unnecessarily disrupting the normal activities or business operations of defendants' computers. The expert may not remove defendants' computers from defendants' premises. Moreover, only the expert and the expert's employees assigned to this project are authorized by this order to inspect or otherwise handle defendants' computers. Neither Weatherford personnel nor Weatherford's counsel will inspect or otherwise handle defendant's computers. The expert will maintain all information in the strictest confidence and maintain a copy of the mirror images and all recovered data and documents until sixty days after the conclusion of litigation.

3. Within fourteen (14) days of imaging defendant's computers, the expert shall provide the parties with a report describing the computers that defendants produced as well as his actions with respect to each computer. This report shall include a detailed description of computer imaged by the expert.

4. Once the expert has images of defendants' computers, he shall recover from the mirror images all available word-processing documents, incoming and outgoing email messages, presentations or marketing materials, spreadsheets, and other files, including but not limited to those files that were "deleted." The expert shall provide the recovered documents in a reasonably convenient and searchable form to

    defendants' counsel, along with, to the extent possible, the information showing when any files were created, accessed, copied, or deleted, and the information about the deletion and the contents of deleted files that could not be recovered. The expert shall also provide plaintiff notice of when the documents and data were provided to defendants' counsel for review.

5.  Within twenty (20) days of the receipt of the recovered documents and data, defendants' counsel shall appropriately supplement defendants' responses to discovery requests, and send to Weatherford's counsel all responsive and non-privileged documents requested by Weatherford in the June 2010 subpoena duces tecum.

Dated this 2nd day of June, 2011.

            */s/ Charles S. Miller, Jr.*
            Charles S. Miller, Jr.
            United States Magistrate Judge